IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JANET B. NUNN,

                Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

No. 10-CV-1458-HZ

OPINION AND ORDER


Alan Stuart Graf
ALAN STUART GRAF P.C.
316 Second Rd
Summertown, TN 38483

      Attorney for Plaintiff

/ / /

/ / /


1 - OPINION AND ORDER

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97204

Richard A. Morris
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Ste. 2900 M/S 901
Seattle, WA 98104

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff, Janet B. Nunn ("Plaintiff" or "Nunn"), brings this action pursuant to the Social

Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

Commissioner of Social Security (the "Commissioner").  The Commissioner found Plaintiff not

disabled and denied her applications for Title II Disability Insurance Benefits ("DIB") pursuant to

42 U.S.C. §§ 416 and 423.  For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for additional proceedings.

## PROCEDURAL BACKGROUND

     On May 14, 2007, Plaintiff filed for DIB alleging a disability onset date of July 1, 2002,

based on depression, anxiety, fibromyalgia, high cholesterol, and post-traumatic stress syndrome

("PTSD").  R. at 8, 106.  Plaintiff's applications were denied, and she requested a hearing before

an administrative law judge ("ALJ") of the Social Security Administration ("SSA").  R. at 8.  A

video hearing was held on September 9, 2009, before ALJ John J. Madden, Jr.  R. 14.  On

November 2, 2009, the ALJ found Plaintiff not disabled.  Id.  Plaintiff requested a review of the

ALJ's decision, but the Appeals Council denied Plaintiff's request on October 4, 2010, making it

2 - OPINION AND ORDER

the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 422.210.  This appeal
followed.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record.
Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment which . . . has lasted or can
be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §
423(d)(1)(A).  Disability claims are evaluated according to a five-step procedure.  See Valentine
v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).  The claimant bears the ultimate
burden of proving disability.  Id.

In the first step, the Commissioner determines whether a claimant is engaged in
"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.
137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner
determines whether the claimant has a "medically severe impairment or combination of
impairments."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not,
the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one
of a number of listed impairments that the [Commissioner] acknowledges are so severe as to
preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d),

416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If so, the claimant is not disabled.  If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work.

Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the

Commissioner meets his burden and proves that the claimant is able to perform other work which

exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in

substantial gainful activity from her alleged onset date of July 1, 2002, to her date last insured,

December 31, 2006.[1]  R. at 10, Finding 2.  At step two, the ALJ found Plaintiff's fibromyalgia to

be a "severe" impairment.  Id., Finding 3.  At step three, the ALJ found Plaintiff's impairments

did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404,

Subpart P, Appendix 1.  R. at 11, Finding 4.  At step four, the ALJ found Plaintiff was able to

perform the following past relevant work as a: (1) caregiver; (2) school bus driver; (3) bakery

helper; (4) driver for dry cleaner; (5) cleaner; and (6) fast food worker.  R. at 14, Finding 6.

---

[1] The Commissioner contends, and I agree, that the relevant time period for determining
whether Plaintiff is disabled is between July 1, 2002, and December 31, 2006–Plaintiff's date last
insured.  The burden is on Plaintiff to show she was disabled prior to her date last insured.  See,
e.g., Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).

Having found Plaintiff was able to perform past relevant work, the ALJ did not make a step five finding.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ erred in finding Plaintiff did not have a severe medically determinable mental impairment; (2) the ALJ improperly found Plaintiff's complaints were not entirely credible; (3) the ALJ improperly

5 - OPINION AND ORDER

considered lay witness evidence; and (4) the ALJ erred in finding Plaintiff was able to perform past relevant work. Based on the ALJ's alleged assignments of error, Plaintiff seeks an order reversing the Commissioner's decision and remanding for the immediate award of benefits. I address each assignment of error in turn.

### I. Whether Plaintiff Has Severe Mental Impairments

Plaintiff contends the ALJ erred at step two by failing to designate her depression as a severe impairment. At step two of the sequential evaluation, the ALJ found Plaintiff's "mental impairments not medically determinable." R. at 10. In doing so, the ALJ reasoned:

> Claimant received psychological counseling from Sheila Crandles, L.C.S.W. but most of this occurred after the date last insured ended and generally related to family problems rather than a specific diagnosis. Since the treatment records relating to mental health care fall prior to the date last insured and do not indicate a specific diagnosis and treatment, the claimant's mental impairments are considered not medically determinable.

R. at 11 (internal citations omitted).

At step two of the sequential evaluation, the ALJ must determine whether Plaintiff has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. § 416.909. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [sic] ability to work.'" E.g., Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The step two inquiry is a de minimis screening device to dispose of groundless or frivolous claims. Yuckert, 482 U.S. at 153-54.

The Commissioner concedes the ALJ failed to consider the medical opinion of Leonard Marcel, M.D., Plaintiff's treating physician who diagnosed Plaintiff with depression. R. at 174-77. The Commissioner asserts the ALJ's error was justified because Dr. Marcel's records provide

6 - OPINION AND ORDER

no objective evidence supporting his diagnosis.  The Commissioner admits–and I agree–that it is improper for the Commissioner to make assertions not articulated by the ALJ.  E.g., Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court cannot rely upon reasoning the ALJ did not express) (citation omitted).  Confusingly, in the same breadth, the Commissioner contends it is not asserting "grounds not articulated by the ALJ," but is simply pointing "to evidence in the record" supporting the ALJ's decision.  Def.'s Br., pp. 7-8.

The Commissioner's arguments are not well taken.  As the Commissioner readily acknowledges, the ALJ himself did not articulate any reasons for ignoring Dr. Marcel's opinion.  Thus, the Commissioner advances a post-hoc rationalization which I may not consider.  Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (court is "constrained to review the reasons the ALJ asserts") (internal quotation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

With respect to the reasons the ALJ did provide when finding Plaintiff's mental impairments not medically determinable, I conclude they are not sustainable.  The record demonstrates Plaintiff had at least seventeen counseling sessions with Sheila Crandles, L.C.S.W. ("LCSW Crandles") between March 2005 and April 2006.  R. at 230-257.  Contrary to the ALJ's finding that LCSW Crandles did not "indicate a specific diagnosis," LCSW Crandles specifically diagnosed Plaintiff with "296.32."  R. at 255, 261.  "296.32" is equivalent to major depressive disorder, recurrent, moderate.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision ("DSM-IV-TR"), pp. 371, 860.

7 - OPINION AND ORDER

In addition, the ALJ's error at step two was not harmless. An ALJ's error in the severity determination at step two is harmless where the ALJ considers any limitations posed by the impairment at step four. E.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, Dr. Marcel expressly diagnosed Plaintiff with depression and concluded, among other things, that Plaintiff was "chronically stressed." R. at 177. LCSW Crandles also diagnosed Plaintiff with depression and noted in her medical notes that Plaintiff suffered from excessive fatigue, social isolation, and diminished memory and concentration. R. at 229, 235, 237, 240, 249. While the ALJ's error at step two may have been harmless in the sense that the ALJ did not render his ultimate non-disability determination based on his step two findings, he nonetheless failed to incorporate any limitations related to Plaintiff's mental impairments into his RFC assessment. The record, at a minimum, shows that Plaintiff's depression imposed some functional limitations on Plaintiff. Under these circumstances, the ALJ's error at step two is reversible error. See, e.g., Lewis v. Astrue, 498 F.3d at 511 (to establish reversible error at step two the claimant must show the ALJ's RFC assessment did not include the contested step two impairments).

## II. Whether the ALJ Gave Sufficient Reasons for Rejecting Plaintiff's Testimony

Plaintiff argues the ALJ erred by discrediting her complaints of pain and fatigue related to her fibromyalgia. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. E.g., Smolen, 80 F.3d at 1281-82. The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. Id. at 1284.

8 - OPINION AND ORDER

If the claimant satisfies the above test and there is no affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. Id. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (citations omitted).

Both parties agree the ALJ did not find Plaintiff to be malingering and thus could only reject Plaintiff's pain testimony based on clear and convincing reasons. With respect to Plaintiff's fibromyalgia, the ALJ concluded:

> [T]he record stated it seemed "relatively well managed." Exhibit 16F/13. She reported her overall pain would "wax and wane" and specifically her back pain "comes and goes." Exhibit 19F/1. A physical examination showed sensation to light touch was intact in all four extremities. There was normal and equal strength in the hands. In her legs, there was normal and equal strength for toe extension and ankle dorsiflexion against resistance. The claimant was able to perform shallow squats and rise maneuvers without difficulty. She could walk on her toes. There was negative straight leg raising bilaterally and the gait/station were normal. Exhibit 19F/2.
>
> Further, some improvement has been noted in the record. The claimant reported during a visit to her primary care provider that she had been "doing well," her mood was better and her sleep habits improved. She was not experiencing as much "total pain." Treatment notes also state she continued to "do well" with the current dose of medication. She noticed a "definite improvement while taking medication."

R. at 12 (internal citations omitted).

The reasons proffered by the ALJ for discounting Plaintiff's pain testimony are not clear and convincing. The record demonstrates that in December 2007 Edward Taylor, PA-C ("PA-C Taylor") examined Plaintiff, noting, "Overall doing better today, not as much 'total pain.'" R. at 313. In August 2008 PA-C Taylor again examined Plaintiff, assessing, "Likely fibromyalgia. . . . [Plaintiff] seems relatively well managed." R. at 319. PA-C Taylor's scant notations indicating

9 - OPINION AND ORDER

that Plaintiff appeared to feel better at certain times simply do not constitute clear and convincing reasons for discounting Plaintiff's pain testimony.

In addition, the fact that Plaintiff's pain "waxed and waned" is not a clear and convincing reason for discrediting Plaintiff's pain testimony.  In fact, the fluctuations in pain described by Plaintiff are consistent with a diagnosis of fibromyalgia.  See Simington v. Astrue, No. CV-09-670-TC, 2011 WL 1261298, at *4 (D. Or. 2011) ("Fibromyalgia pain can fluctuate and medications and self-help measures may help lessen the severity of the symptoms, but there will still be days that are worse than others.  [Claimant's] treatment is consistent with a fibromyalgia diagnosis.") (Internal citations omitted); see also Olguin v. Astrue, No. CV 08-6548-JEM, 2009 WL 4641728, at *11 (C.D. Cal. 2009) ("According to the American College of Rheumatology, a characteristic of fibromyalgia 'is the waxing and waning and intensity of the symptoms with good days and bad days.'").  Similarly, the fact that Plaintiff's pain symptoms were noted to have fared better on certain medications does not amount to a clear and convincing reason supporting the ALJ's adverse credibility finding.

The ALJ's reliance on the July 9, 2008, medical notes of Laura S. Rung, M.D. ("Dr. Rung") is also unavailing.  Dr. Rung evaluated Plaintiff and documented Plaintiff had sensation to light touch, had normal and equal strength in the hands, had normal strength for toe extension, had normal ankle dorsiflexion, maintained the ability to perform shallow squats, was able to walk on her toes and do leg raises, and had normal "gait and station." R. at 12, 397-98.  The ALJ, however, simply recites Dr. Rung's medical notes without any analysis.  Merely repeating select observations by Dr. Rung without further analysis does not constitute a "clear and convincing" reason for finding Plaintiff not credible.  Moreover, Dr. Rung herself concluded that based on the

same physical examination on which the ALJ used to discredit Plaintiff, Plaintiff suffered from "probable fibromyalgia." R. at 397.

The ALJ also found Plaintiff was not credible because her "treatment has been essentially routine and/or conservative in nature." R. at 12. In support of his finding, the ALJ reasoned that Plaintiff's "treating provider recommended 'diaphragmatic breathing' to control her stress and pain," Plaintiff "stated her fibromyalgia pain improved with heat," and "[a]erobic exercise was suggested" as a treatment for Plaintiff's fibromyalgia. R. at 12, 177, 213, 396, 398. As noted above, Dr. Marcel treated Plaintiff's depression, not fibromyalgia. Although he gave Plaintiff instructions for "diaphragmatic breathing," R. at 177, nothing in the record indicates Dr. Marcel treated Plaintiff for anything other than depression. Id. The Commissioner fails to highlight any evidence suggesting Plaintiff mentioned anything about her pain or any other symptom otherwise related to fibromyalgia to Dr. Marcel. Instead, the evidence relied on by the ALJ simply demonstrates Dr. Marcel saw Plaintiff for her depression and that Plaintiff only discussed issues related to her stress and depression with Dr. Marcel. The ALJ's adverse credibility finding based on Dr. Marcel's recommendation that Plaintiff do "diaphragmatic breathing" exercises is neither clear and convincing nor based on substantial evidence.

In addition, Dr. Rung's recommendation on July 9, 2008, that Plaintiff do aerobic exercises to address her fibromyalgia does not amount to a clear and convincing reason to discredit Plaintiff's allegations of pain. Although "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," Parra, 481 F.3d at 751, nothing in the record before me indicates Dr. Rung's recommended treatment is conservative, especially when considering that the Ninth Circuit has previously recognized

fibromyalgia as a disease which is "poorly-understood within much of the medical community"

and for which "there is no cure."  Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004).

Indeed, the ALJ fails to address the longitudinal record of medications Plaintiff has been

prescribed to treat her fibromyalgia and pain.  For example, the ALJ does not mention that in

September 2008 Plaintiff told Scott Johnson, PA-C ("PA-C Johnson") that her fibromyalgia was

causing her back pain and after conducting a physical examination, PA-C Johnson prescribed

Tramadol to treat her pain.  R. at 287-88.  Similarly, the ALJ does not mention that in December

2007, Michael Halferty, M.D. ("Dr. Halferty"), diagnosed Plaintiff with fibromyalgia and

"[a]cute exacerbation chronic pain" and prescribed Ultram ER to help manage her pain.  R. at

295.  The ALJ's failure to articulate why he relied only on Dr. Rung's course of treatment and not

those by PA-C Johnson or Dr. Halferty provides additional support that the ALJ's adverse

credibility determination in this instance was improper.  See Lingenfelter v. Astrue, 504 F.3d

1028, 1035 (9th Cir. 2007) (an ALJ may not selectively read the record).

       Finally, the ALJ concluded that Plaintiff's daily activities "do not reflect the disabling

limitations" alleged by Plaintiff, stating as follows:

> The claimant can also perform a full range of daily activities which is inconsistent
> with the nature, severity and subjective complaints of the claimant.  In the claimant's
> adult function report she stated her day encompassed helping her children with
> school work, preparing meals, watching the television, caring for her animals and
> personal care could be performed unassisted.  Housework included washing dishes,
> folding laundry and vacuuming.  She also could shop for groceries and clothes in
> stores and by mail.  Socially she attended a fellowship up to five times a month.  The
> claimant described having good days where she could complete her activities of daily
> living with "very little difficulty."  The record also states she was camping.  Exhibits
> 5E/l-7,7F, 14F/3, 19F/l.  Additionally, the claimant was able to care for her young
> children at home while her husband worked, without any particular assistance, which
> can be quite demanding.  Exhibits IF/7, 7F.

R. at 12-13.

12 - OPINION AND ORDER

An ALJ may find a claimant not credible if her daily activities are inconsistent with her alleged limitations. <u>Tomasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008). "[I]f a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989). In this instance, the ALJ failed to make a specific finding that Plaintiff's daily activities amounted to physical activity sufficient to discredit her pain testimony. The record simply shows Plaintiff "supervises" her two sons during breakfast and lunch, supervises them while they "clean up," and supervises them as they get ready for bed.[2] R. at 34, 126. The record further shows that Plaintiff's husband does the majority of the housework and assists with the supervision of their two sons living at home. R. at 34-35, 127-28. It is also undisputed that Plaintiff's two sons do the laundry, do the majority of the lifting at home, pick things up off the floor for Plaintiff, and help Plaintiff cook and clean. Id. In fact, Plaintiff specifically stated she needs help doing laundry, including lifting, carrying, loading and unloading the laundry, and can only wash "some dishes," fold laundry, and occasionally vacuum. R. at 127-28. Axiomatically, that Plaintiff watches television, helps her sons with their school work, and attends "fellowship 0-5 times a month" does not make Plaintiff's pain allegations any less credible. R. at 126, 130.

In addition, the ALJ's conclusion that Plaintiff did not need assistance with her "personal care" misconstrues the record. Plaintiff indicated she has problems with her "personal care" and

---

[2] Plaintiff has two sons, aged ten and twelve, who live with her at home. R. at 33. Plaintiff also has another son who is under "psychiatric residential treatment" and who has not lived at home since 2004. Id.

explicitly stated she has trouble dressing, does not shower when her pain is bad, and does not shave as often as she used to shave.  R. at 127.

Finally, although Plaintiff stated that "[o]n a really good day" she had "very little difficulty" with certain functions, including standing and walking, she also noted that on other days she could not get anything done.  R. at 131.  As noted above, such fluctuations in pain are consistent with fibromyalgia.  See Simington, No. CV-09-670-TC, 2011 WL 1261298, at *4 (fibromyalgia pain may fluctuate).  The ALJ's reliance on the fact that Plaintiff recently went camping is also unavailing.  Although the record shows Plaintiff went camping for several days in November 2008, she testified she did not do well while she was camping, was in "absolute agony," and sat around for much of the time.  R. at 35.

Viewing the record as a whole, the evidence on which the ALJ relied does not undermine Plaintiff's credibility.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted).  Plainly stated, the ALJ's reasons supporting his adverse credibility finding are not clear and convincing or supported by substantial evidence.

### III.  Lay Evidence

The Commissioner asserts the ALJ properly rejected a third party function report completed on July 18, 2007, by Plaintiff's husband, Gerald Wayne Nunn, II ("Mr. Nuun").  R. at 13.  The Commissioner asserts the ALJ properly found Plaintiff was not credible because Mr. Nuun's third party function report included statements similar to Plaintiff's own subjective complaints and as such, his statements could be rejected for the same reasons as hers.

14 - OPINION AND ORDER

The ALJ considered Mr. Nuun's third party function report even though it was submitted after Plaintiff's date of last insured because "it related to [Plaintiff's] severe impairment prior to December 31, 2006." Id. The ALJ, however, rejected the report on the basis it was inconsistent with Plaintiff's activities of daily living. Id. Although an ALJ may reject lay witness statements based on the same reasons that he rejected the claimant's own testimony, he may only do so if he properly discredited the claimant's testimony. Valentine, 574 F.3d at 694. As noted above, the ALJ improperly discredited Plaintiff's testimony. It follows that his reasons for rejecting Mr. Nuun's third party function report was also improper. Such error was not harmless because Mr. Nuun's report included limitations the ALJ was required to consider, including limitations associated with Plaintiff's physical and mental conditions. R. at 144-45, 147.

**IV. Plaintiff's Ability to Perform Past Relevant Work**

Lastly, Plaintiff argues the ALJ erroneously found she could perform past relevant work at step four of the sequential proceedings. I agree.

At step four of the sequential proceedings, the ALJ determines if the claimant can perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant can perform such work, she is not disabled and the sequential evaluation concludes. Id. In construing his step four findings, the ALJ may draw upon testimony of a vocational expert ("VE"). 20 C.F.R. § § 404.1560(b)(2). The ALJ's questions to the VE must include all properly supported limitations. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ may then compare the demands of a claimant's past relevant work with the claimant's RFC in determining whether the claimant may presently perform past relevant work. SSR 82-62, 1982 WL 31386, at *3. The ALJ, however, must generally consider only work experience "done within the last 15 years,"

which "lasted long enough for [the claimant] to learn to do it," and which constituted "substantial gainful activity."[3]  20 C.F.R. § 404.1565(a)

Here, the ALJ asked the VE to evaluate the exertional demands relating to Plaintiff's past work.  The VE opined that based on Plaintiff's past work, Plaintiff could perform the following six occupations: (1) caregiver for assisted living, semi-skilled, heavy as performed but medium per the Dictionary of Occupational Titles ("DOT"); (2) school bus driver, semi-skilled, medium but performed as light and medium; (3) bakery helper, semi-skilled, medium per the DOT but heavy as performed; (4) driver for dry cleaner, semi-skilled, medium; (5) cleaner, unskilled, medium; and (6) fast food worker, unskilled, light.  R. at 42-45.  The ALJ compared Plaintiff's "[RFC] with the physical and mental demands of [the full range of light work]" and concluded Plaintiff "was able to perform all of her past relevant work as actually and generally performed." R. at 14.

The Commissioner now concedes the ALJ erred in finding Plaintiff was capable of performing work as a caregiver for assisted living, bakery helper, driver for dry cleaner, and a cleaner because those occupations involve medium or heavy exertional levels–exertional levels which directly contradict the ALJ's own RFC assessment limiting Plaintiff to only light work.  R.

---

[3]  The Ninth Circuit has stated that for the purpose of step four, substantial gainful activity means:

> Work done for pay or profit that involves significant mental or physical activities. Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity.  Monthly earnings averaging less than $300 generally show that a claimant has not engaged in substantial gainful activity.  At the other end of the spectrum, monthly earnings averaging more than $500 generally show that a claimant has engaged in substantial gainful activity.

Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (internal citations omitted).

16 - OPINION AND ORDER

at 11, Finding 5; Def.'s Br., p. 16.  The Commissioner, however, avers the ALJ did not err in

finding Plaintiff able to perform past relevant work as a fast food worker because she worked at

Burger King for approximately one to one and one-half years when she was in high school and

worked at Dairy Queen for a few months when she was sixteen years old.  R. at 43-44.  The

Commissioner also contends the ALJ properly concluded Plaintiff could work as a school bus

driver because although Plaintiff testified she could not pass the physical examination required to

renew her commercial driver's license, Plaintiff failed to "establish[] she did not or could not pass

the physical requirements to obtain a commercial license, or that a commercial license was

required for the position."  Def.'s Br., p. 17.

The Commissioner's arguments are unavailing because they fail to remedy the ALJ's

improper omission of Plaintiff's physical and mental limitations from his RFC assessment–an

assessment which the ALJ explicitly relied on when determining Plaintiff was capable of

performing past relevant work.  R. at 14.  A claimant's RFC is the most she can do in spite of her

impairments.  20 C.F.R. § 404.1545(a)(1).  In construing a claimant's RFC, the ALJ must

consider a claimant's medical record and symptom testimony, as well as statements by lay

witnesses.  20 C.F.R. § 404.1545(a)(3).  The RFC must include all work-related impairments,

both severe and non-severe.  20 C.F.R. § 404.1545(a)(2).  As explained above, the ALJ erred in

rejecting the limitations set for in Plaintiff's own subjective testimony and in Mr. Nuun's lay

witness statements.  The ALJ's RFC assessment does not account for all of Plaintiff's limitations

and accordingly, the RFC is not supported by substantial evidence.  See, e.g., Lingenfelter, 504

F.3d at 1041 1035 (an RFC is not supported by substantial evidence when the ALJ improperly

excludes pain symptoms from the RFC).  That being said, the ALJ's determination that Plaintiff

17 - OPINION AND ORDER

can perform past relevant work is flawed and his findings at step four of the sequential evaluation cannot be sustained.

## V. Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) (citation omitted).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (citation omitted). The reviewing court may decline to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

Even if the improperly omitted evidence in this case were credited as true, it is unclear how Plaintiff's alleged limitations would affect her ability to work or whether the ALJ would be

required to find Plaintiff disabled.  On remand, the ALJ shall revisit his step 2 through step 5 findings and resolve the deficiencies and errors discussed in this Opinion and Order.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Plaintiff is not disabled and not entitled to DIB is based on erroneous legal standards and not supported by substantial evidence.  The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

Dated this 9th day of  February, 2012.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge


19 - OPINION AND ORDER